FREDERIC S. COZZENS, Respondent, *v.* ALVIN HIGGINS,
Appellant.

Where the action is brought to recover damages of defendant for injuries inflicted ·
upon the plaintiff's possession, etc., a photograph of plaintiff's premises as
affected by the defendant's use and occupation of the same, is competent
evidence as an aid to the jury in applying the evidence and showing the con- ·
dition of the premises at the time it was taken.

APPEAL from the Supreme Court. The action was trespass,
for the wrongful act of the defendant in entering upon prem-
ises leased and occupied by the plaintiff, and substantially
expelling him from possession and breaking up his business,
which was that of a wine merchant.

The cause was tried at the New York Circuit, before Mr.
Justice LOTT, and a verdict was rendered for the plaintiff, on
conflicting evidence and under instructions, with which both
the parties were satisfied. The finding of the jury upon the
facts was sustained at the Special and · General Terms, and ·
no questions of law were raised, except on the admission of
evidence.

It appeared, on the trial, that, in the summer and fall of
1855, the plaintiff was in the occupancy of a wine store, at
No. 85 Chambers street, under a lease from a third party,
which was to expire on the 1st of May, 1856.

The defendant owned the next two lots on the west, being
numbers 87 and 89, on which he proceeded, in the fall, to
erect two new six-story stores, in lieu of the old· buildings.
In June or July he had procured a lease, from the owner of
the premises occupied by the plaintiff, for a term of years,
to commence on the 1st of May following; on which he
intended to erect a third store, which he afterward did.
Without disclosing these facts to the plaintiff, he endeavored,
during the summer, to buy out his leasehold interest, but
refused to pay the price he named, which was $3,000.

The act of 1855 provides as follows: " Whenever excava-
tions hereafter commenced for building, or other purposes, on

any lot or piece of land in the city and county of New York, and the city of Brooklyn, shall be intended to be carried to the depth of more than ten feet below the curb, and there shall be any party or other wall, wholly or partly on adjoining land, and standing upon or near the boundary lines of such lot, the person causing such excavations to be made, if afforded the necessary license to enter on the adjoining land, and not otherwise, *shall, at all times, from the commencement until the completion of such excavations, at his own expense, preserve such wall from injury, and so support the same by a proper foundation, that it shall remain as stable as before such excavations were commenced.*"

It appears, from the proof and the finding, that the defendant not only did not obtain or apply for the license contemplated by the act, but that, in the beginning of September, he proceeded, without notice or authority, to open holes in the walls of the plaintiff's cellar, in which his wines were deposited, and to render it untenantable, by projecting into it heavy timbers, for the purpose of shoving up his own east wall and the plaintiff's west wall, while he was excavating the earth under each to the depth of twenty feet, and laying foundations for the new stores. This he persisted in doing, though forbid by the plaintiff. The latter was doing a business, amounting, in gross, to some $50,000 a year. The bulk of his stock was stored in the cellar; and it was there that most of the business was done, except the sales made at the counter. The defendant excavated on the lot of the plaintiff as well as his own; undermined the cellar steps of No. 85, in front as well as in the rear; removed the stones and built them into his own wall; took from the plaintiff his fireplace, chimney and out-building; kept his property exposed to marauders; compelled him to keep watches by night or day; thrust a short timber and jack-screw into the front door of the store, keeping them there for five days, against his remonstrance; and, under color of protecting his walls, disabled him from protecting them himself. These acts were continued, in various forms, for months. The plaintiff was substantially dispossessed, and he was compelled, at last, in the month of

November, to engage a store elsewhere, and transfer to it his property and business.

The exceptions urged on the appeal were on questions which arose in this wise: Proof having been given of the condition of the plaintiff's premises at the time the defendant entered with his workmen, and of the subsequent acts which rendered them untenantable; and, for the purpose of showing their state at the time the plaintiff was compelled to leave them, his counsel "produced and put in evidence a photograph made, and showing the condition of the cellar, in November, 1855. Defendant's counsel objected. The court allowed the photograph to be exhibited to, and examined by, the jury, and the defendant's counsel excepted."

In the course of the plaintiff's examination, he testified to the inadequacy of the means resorted to by the defendant to protect the store against the consequences of the excavation. He was asked: "What was the effect of the digging?" Question objected to by defendant's counsel; the court overruled the objection, and defendant's counsel excepted. Answer: "My cellar floor dropped down about two-thirds across it. It was left in that condition for nearly nine months or more." The other exception now insisted on, is to the following clause in his testimony: "As regards the vault under the sidewalk, the defendant, in building his own vault, suffered the end of mine to fall down."

The jury found a verdict for the plaintiff, for $3,000. The judgment entered thereon was affirmed at the General Term in the first judicial district.

*Augustus F. Smith*, for the appellant.

*William Fullerton*, for the respondent.

PORTER, J. The appellant assumed to justify the acts complained of, on the ground that they were necessary to protect the property of the plaintiff from injuries to which he was about to expose it, by undermining the walls of both; that the means he used were appropriate and adequate; and that they were resorted to with the assent of the respond-

ent.   The evidence objected to was admissible, as it tended to show the extent of the actual injury, and the insufficiency of the appliances to which the defendant had recourse for the purpose of averting it.   It was for the jury to determine, in view of all the evidence, and under appropriate instructions from the court, how far the damages resulting to the plaintiff were referable to the defendant's wrong.   The photographic view of the cellar was an appropriate aid to the jury in applying the evidence, as it was taken in the month of November, and showed the condition of the premises at that time.   None of the evidence objected to was irrelevant to the issue, and in no instance was any ground of objection stated, to justify its exclusion by the judge.

The cause was well tried, and the judgment should be affirmed.

Judgment affirmed.